| | | |
|---|---|---|
| IN RE MATTHEW ALAN JENKINS, | ) ) ) | |
| Debtor. | ) ) | |
| DIANNA LEE JENKINS, | ) ) | **ORDER** |
| Appellant, | ) ) | |
| v. | ) ) ) | |
| JAMES T. WARD, TRUSTEE FOR MATTHEW ALAN JENKINS, | ) | |
| Appellee. | | |

**THIS MATTER** comes before the Court on the Notice of Appeal (Doc No. 1), filed

December 26, 2012 of Dianna Lee Jenkins (Appellant), her Supporting Brief (Doc. No. 3), and

James T. Ward's (Appellee or Trustee) Responsive Brief. (Doc. No. 6).[1] The Court reviews the

Order issued by the Bankruptcy Judge, (Order) Case No. 12-05033 (Bankr. Doc. No. 64).

I.      BACKGROUND

In March 2010, Federated (Creditor) obtained a default judgment against Matthew

Jenkins (Debtor). (Bankr. Doc. No. 55-1 at 2). The Debtor was served with a writ of execution

in July 2010, but it was determined that the Debtor had no assets upon which to execute.

Therefore, the writ was returned unexecuted. (Id.). The Debtor appealed the judgment to the

North Carolina Appellate Court and final judgment was entered in November 2011. (Id.).

---

[1] In their respective briefings, the parties have consistently identified themselves as "Appellant" and "Appellee." In light of the ruling discussed *infra*, the instant case is not an appeal in a formal sense. Nonetheless, the Court continues to identify the parties under those terms for the sake of consistency.

On April 11, 2012, the Debtor filed a pro se voluntary petition for relief pursuant to Chapter 7 of Title 11 of the Bankruptcy Code. (Bankr. Doc. No. 34-1). On June 8, 2012, Appellee, as trustee, filed an amended complaint alleging that Appellant Dianna Lee Jenkins was a recipient of fraudulent conveyances made by the Debtor and was in possession of property of the estate. (Bankr. Doc. No. 34). Specifically, Appellee sought to recover some or all of the alleged $400,000 that Debtor had received in lawsuit proceeds during a two year period, which had been deposited into the bank account of Appellant (his wife). (Id.). As of September 14, 2012, amended bankruptcy papers indicate that Debtor acknowledged collecting $226,031.33 in lawsuit settlement proceeds during the two years before the date of petition. (Bankr. Doc. Nos. 55-5 at 9; 80 at 5-6).

On October 29, 2012, Appellee filed a motion seeking partial summary judgment for the fraudulent conveyance claims asserted in the Complaint. (Bankr. Doc. No. 55) On November 13, 2012, Appellant responded. (Bankr. Doc. No. 63). On November 28, 2012, the Bankruptcy Court conducted a hearing at which Appellant was not present. On December 12, 2012, the Bankruptcy Court granted summary judgment as to Appellee's claims for actual fraud and partial summary judgment for constructive fraud. (Bankr. Doc. No. 64: Order). In the Order, the Bankruptcy Court held that Appellant was liable to Appellee for the value of the transfers made to her in the amount of $226,031.33 (Order at 20).

## II.    STANDARD OF REVIEW

28 U.S.C. § 158(a) provides district courts with jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158(a). On appeal, a district court reviews a bankruptcy court's findings for clear error, and reviews its conclusions of law de

novo.  In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992).  Findings of fact are clearly erroneous when, in light of the complete evidentiary record, the reviewing court "is left with the definite and firm conviction that a mistake has been committed."  McGahern v. First Citizens Bank & Trust Co. (In re Weiss), 111 F.3d 1159, 1166 (4th Cir. 1997).  Conversely, where there exist "two permissible views of the evidence, the fact finder's choice between them cannot be erroneous."  Anderson v. Bessemer City, 470 U.S. 564, 574 (1985).

Finally, the existence of a final order is predicated on the bankruptcy court having constitutional authority to enter such judgment.  Where, as here, the Court finds that the bankruptcy court lacks such authority to enter a final judgment, the ruling of the bankruptcy court is treated as proposed findings and recommendations for a final ruling by the district court.  Stern v. Marshall, 131 S. Ct. 2594, 2601-02 (2011).  28 U.S.C. § 157(c)(1) establishes that "any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

## III.   DISCUSSION

Appellant has lodged several objections, ranging from general to specific, to the bankruptcy judge's order granting summary judgment.  Appellant objects to the award of summary judgment in favor of Appellee for three general reasons: first, that the decision was inconsistent with the facts presented; second, that genuine issues of material fact existed, and, third, that Appellee was not entitled to judgment as a matter of law.  The Court reviews these issues de novo.  Appellant also provided numerous specific objections.[2]  They are as follows:

---

[2] Appellant, appearing pro se, possesses a working knowledge of the form and subject matter as her brief is, in the

(1) The Court erred by entering final judgment without jurisdiction;

(2) The Court erred in finding Appellant to be the initial transferee;

(3) The Court erred by failing to determine that the lawsuit proceeds were "assets" as defined by North Carolina law;

(4) The Court erred by ruling that the Debtor's lawsuit proceeds were "transferred" under North Carolina law;

(5) The Court erred in finding actual intent to hinder, delay or defraud;

(6) The Court erred by finding that the lawsuit proceeds were concealed or removed beyond the reach of creditors;

(7) The Court erred in the amount of the judgment awarded.

The Court reviews the findings of the Bankruptcy Judge de novo as to all of these issues.

A.      Constitutionality of Final Order

Although this Court recognizes that bankruptcy judges are uniquely capable of adjudicating most effectively the myriad of matters related to bankruptcy proceedings, the Constitution reserves to Article III courts the authority to make final decisions in certain matters. Among the matters reserved to Article III courts are actions for fraudulent conveyance such as the one brought here.  In Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), the Court explained that, although a core proceeding, a fraudulent conveyance action is akin to a common law contract suit rather than an intertwined component of federal regulation.  Therefore, the right to a jury trial under the Seventh Amendment attaches.  Id. at 54-56, 64-65.  The Court in Stern redoubled its commitment to this holding by distinguishing from bankruptcy proceedings those actions "at common law that simply attempt [ ] to augment the bankruptcy estate [which are] the very type of claim that we held in . . . Granfinanciera must be decided by an Article III court. Stern, 131 S. Ct. at 2616.

---

main, well-presented and cogent.  Nonetheless, the titles and numbering of the objections in Appellant's brief were not entirely clear to the Court on their own terms.  In certain instances, Appellant listed multi-part objections as a single objection and addressed only one aspect in that particular section.  In other instances, Appellant placed the analysis for a discrete objection across several different sections.  The seven specific objections listed here are extracted from the brief and given discrete sections.

The Court in <u>Stern</u>, however, did not divest bankruptcy courts of their jurisdiction to hear non-core matters that are otherwise related to a case under Title 11.  Under 28 U.S.C. § 157(c)(1), the bankruptcy judge oversees discovery, takes evidence, and submits proposed legal and factual findings to the district court, which then reviews de novo those matters to which objection is made, and issues a final decision.  Accordingly, this Court reviews the Bankruptcy Judge's findings and recommendations de novo as to those matters to which the Appellant has lodged specific objections.

B.    <u>Initial Transferee</u>

11 U.S.C. § 550(a)(1) establishes that the initial transferee of property of a debtor may be held liable for return of that property or its value in an action brought by the trustee.  Appellant argues that she is not an initial transferee as she did not exercise dominion and control over the property.  To support such claim, Appellant cites <u>Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties)</u>, 99 F.3d 151 (4th Cir. 1996).  <u>Bowers</u> established that "in order to constitute the 'initial transferee' of property under § 550(a) of the Bankruptcy Code, a person or entity must have exercised legal dominion and control over the property." <u>Id.</u> at 156.

Appellant lodges two objections to the Bankruptcy Court's findings.  First, Appellant maintains that the Bankruptcy Judge erred in finding that Appellant <u>exercised</u> legal dominion and control over the funds.  Second, Appellant objects that the Bankruptcy Judge ignored the required test and incorrectly found that the <u>Bowers</u> court carved out an "equitable exemption."[3]

---

[3] Appellant argues that: "In granting summary judgment for the Trustee, the Bankruptcy Court ignored the required Test in <u>Bowers</u> and instead rationalized that the <u>Bowers</u> court carved out an "equitable exemption" for certain transferees and that the <u>Bowers</u> court would not do so in the case at bar."  The order from the Bankruptcy Court does not use the term "exemption" at any point.  The bankruptcy court wrote that: "the Fourth Circuit carved out an equitable <u>exception</u> to § 550(a)…." Case No. 12-05033 (Doc. No. 64 at 17).  Here, the Court infers that Appellant

These objections are inapposite. First, Appellant presents a narrow definition of "exercise" that does not square with existing precedent. The evidentiary record in this case demonstrates that Appellant exercised legal dominion and control over the funds. She actively maintained the bank account in which the funds were held. (Bankr. Doc. 55-5 at 10). More importantly, despite having the legal right to do with those funds as she pleased, she allowed the Debtor to make use of them. (Id.; Bankr. Doc. No. 55-7 at 18-19).

In Bonded Fin. Servs., Inc. v. European Am. Bank, the Seventh Circuit held that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." 838 F.2d 890, 891 (7th Cir. 1996). While the Fourth Circuit expanded on Bonded to include a requirement that the transferee have "exercised" legal dominion and control over the money, it has otherwise consistently followed the description in Bonded of legal dominion and control as the ability to use funds as a party pleases. Unlike a "mere conduit" of the type described in Bowers, Appellant had the legal authority to prevent the Debtor from using the funds, but declined to do so. The authority to prevent another from using the funds for their purposes distinguishes an initial transferee from a 'mere conduit.' The latter are often financial institutions that receive and hold money as a matter of course, but lack the authority to prevent access to the funds by another with legal rights to use them. These facts are central to the distinction between an 'initial transferee' and a 'mere conduit.' Under Bowers, Appellant falls into the former classification. Once the funds were placed into an account in her name and under her maintenance, she possessed the legal right to use them as she pleased, including revoking, at any time, the authorization allowing Debtor to use such funds. In

---

refers to "exception" rather than "exemption."

this case, the exercise consisted of maintaining the account and allowing the Debtor to make full use of such funds. It is fair to infer that, had a party unknown to Appellant sought access to the funds, she would have exercised her legal authority to prevent such use. By maintaining the account for use by the Debtor, Appellant exercised legal dominion and control over the funds.

Second, the Bankruptcy Judge did not carve out an "exemption" from the test in Bowers. The test in Bowers determines whether a party is an 'initial transferee' and subject to strict application of § 550(a), or whether they are a 'mere conduit' because they did not exercise legal dominion and control. The latter are excepted from strict application of § 550(a). In other words, the test in Bowers determines whether a court will apply § 550(a) strictly or recognize an exception on equitable grounds. The Bankruptcy Judge was correct in finding that "the Fourth Circuit carved out an equitable exception to §550(a)(1)." (Order at 17). In so finding, the Bankruptcy Judge properly followed the analytical framework outlined in Bowers in concluding that "[t]he Debtor's admission that he retained access to and spent those funds does not absolve [Appellant] of liability as an initial transferee but rather provides evidence of the fraudulent nature of the transactions." (Id. at 19).

C.      'Assets' Under North Carolina Law

Appellant contends that the Bankruptcy Judge failed to determine that the Debtor's lawsuit proceeds were 'assets' as defined by state law. North Carolina defines an asset as "property of a debtor" but includes an exception for property that is exempt under non-bankruptcy law. N.C. GEN. STAT. § 39-23.1.(2)(b). Appellant argues that the Bankruptcy Court never established that the lawsuit proceeds were not exempt from execution under non-bankruptcy law. Appellee, in contrast, cites to the Fourth Circuit decision in Tavenner v. Smoot,

257 F.3d 401 (4th Cir. 2001) to support the proposition that a transfer of property that would have been exempt under state law may be avoided and recovered by a bankruptcy trustee.

The present objection turns not on whether the lawsuit proceeds are defined as 'assets' under North Carolina law, but whether they are recoverable by the Trustee even though they are exempt under North Carolina law. <u>Smoot</u> addressed this question directly: lawsuit proceeds are normally exemptible unless they have been subject to a fraudulent transfer. Nothing in section 544 or 548 excludes transfers from exempt property. In <u>Smoot,</u> the trustee sought to recover approximately $210,000 of lawsuit proceeds that a debtor had transferred to a corporation that he owned. The Fourth Circuit noted that, in evaluating transfers under §548(a)(1)(A), "courts closely scrutinize transfers between related parties." <u>Id.</u> at 408. Additionally, the Fourth Circuit held that "such transfers, if made without adequate consideration, create a presumption of actual fraudulent intent." <u>Id.</u> Ultimately, the Court in <u>Smoot</u> found such presumption sufficient to establish a prima facie case on the part of a trustee that shifted the burden of proof to the debtor to establish the <u>absence</u> of fraudulent intent. <u>Id.</u> (emphasis in original).

As support for this rationale, the Fourth Circuit cited to § 522(g) of the Bankruptcy Code to note that Congress had anticipated such scenarios and provided a method for debtors to retain exempted property. 11 U.S.C. § 522(g) permits a debtor to exempt property recovered by the trustee if several factors are present, namely: if the debtor could have exempted such property had it not been transferred; if the transfer was involuntary; and, if the debtor did not attempt to conceal the property. "Section 522(g) is, thus, premised on the notion that a bankruptcy trustee can avoid the transfer of exemptible property and recover the property." <u>Smoot,</u> 257 F.3d at 407.

The facts in the instant case bear striking similarity to those in <u>Smoot</u>. Here, the Debtor

transferred approximately $226,033 in lawsuit proceeds into an account maintained by his wife

(Appellant).  The Bankruptcy Judge correctly found that the Debtor maintained access to these

funds for personal use and did not receive any consideration for them.  (Order at 10).  The close

relations between the parties and the lack of adequate consideration established a clear

presumption of actual fraudulent intent and thereby shifted the burden to the Appellant to

demonstrate that no such fraudulent intent existed.  Instead of refuting such presumption,

Appellant, in offering arguments that she failed to exercise dominion and control, conceded that

the debtor continued to use the proceeds for his personal use, stating that: "[e]ven though the

[debtor] was not the bank account owner, *he still owned his funds within the account and spent*

*them*." (Doc. No. 3 at 21). (Emphasis in original).

    These facts are consistent with the findings of the Bankruptcy Judge that the transfer of

such proceeds from debtor to Appellant was fraudulent and could be avoided and recovered by

the trustee.

    D.    <u>Transfer Under North Carolina Law</u>

    The Bankruptcy Judge cited to the Bankruptcy Code's definition of "transfer" in

determining that the debtor had transferred property to Appellant.  Appellant objects, in

substance, that the Bankruptcy Judge should have employed North Carolina law to determine

whether a transfer occurred.  (<u>Id.</u>).  As support for this contention, Appellant cites persuasively to

<u>Starnes v. C.I.R.</u>, 680 F.3d 417 (4th Cir. 2012), to argue that whether a transfer occurred is a

question to be determined under state law.

    While the Court agrees with Appellant that the North Carolina definition of "transfer"

applies in this case, such error was harmless as the North Carolina definition is virtually identical

to that provided under the Bankruptcy Code. North Carolina's version of the Uniform Fraudulent Transfer Act defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset and includes payment of money, release, lease and creation of a lean or other encumbrance." N.C. GEN. STAT. § 39-23.1(12). As cited in the Bankruptcy Judge's order, the Bankruptcy Code defines a transfer as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with (i) property; or (ii) an asset." 11 U.S.C. § 101(54)(D).

The similarity between the two definitions is of such nature that the ultimate finding—that a transfer took place—avails equally whether one employs the North Carolina law or the Bankruptcy Code definition. Additionally, it is immaterial that the Bankruptcy Judge cited to legislative history to suggest a broad reading of the term under the Bankruptcy Code. In light of the factual record of this case, even a narrow reading of the North Carolina statute establishes that a transfer occurred. Here, the record reflects that the Debtor 'conditionally' parted with the property by directing it to be deposited into the Appellant's bank account on the condition that he remain able to use it for his purposes.

    E.    <u>Actual Intent</u>

Defendant objects that the Bankruptcy Judge erred in granting summary judgment for Appellee as there existed a genuine issue of material fact as to the actual intent of Debtor with regard to the fraudulent transfers. Summary judgment "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating a summary judgment motion, a court "must consider whether a reasonably jury could find favor in the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." In re Apex Express Corp., 190 F.3d 624, 633 (4th Cir. 1999). "Summary judgment is generally not appropriate for the disposition of a fraudulent transfer claim based on actual intent because the debtor's subjective intent is at issue." Allman v. Wappler (In re Cansorb Indus. Corp.), 2009 WL 4062220 at *9 (Bankr.M.D.N.C.2009).

### 1. Section 544 and North Carolina Law

The relevant inquiry for the Court is whether a reasonable trier of fact, viewing the evidence in the light most favorable to Appellant, could find that the Debtor lacked the actual intent to effect a fraudulent transfer under North Carolina law. 11 U.S.C. § 544(b)(1) provides that a "trustee may avoid any transfer of an interest of the debtor . . . that is voidable under applicable law by a creditor holding an unsecured claim." The "applicable law" in this case is N.C. Gen. Stat. § 39-23.4(a), which establishes that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) [w]ith intent to hinder, delay or defraud any creditor of the debtor . . . ."

The Bankruptcy Court turned to the "badges of fraud" outlined in Section 39-23.4(b) which establishes that, in determining intent, a court may consider several factors including whether:

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;

11

(3) The transfer or obligation was disclosed or concealed;
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred;
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor;
(12) The debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due; and
(13) The debtor transferred the assets in the course of legitimate estate or tax planning.

N.C. Gen. Stat. § 39-23.4(b).

The Bankruptcy Judge found that several factors were present under a "badges of fraud" analysis including: (1) the transfers were made to his wife; (2) the Debtor retained authorized use of the proceeds; (3) the Debtor continued to make use of the proceeds by writing checks and making withdrawals from the account in which the funds were deposited; (4) the Debtor failed to disclose the accounts on his amended bankruptcy papers and thereby effectively concealed the transfers; (5) the Debtor had already been sued by creditor before the transfers were made; (6) the sums deposited in his wife's account reflected substantially all of the Debtor's cash assets as he had no other income for 2010 or 2011; (7) the absence of consideration received for the

transfer despite the fact that (8) Debtor continued to owe money to creditor. (Order at 10-11).[4]

Evaluating the "entirety of the circumstances surrounding the transaction at issue," and taking "into account factors that militate against a finding of fraudulent intent as well as those that suggest fraud," the Bankruptcy Judge found that the badges of fraud analysis was sufficient to establish actual fraudulent intent on the part of the Debtor. (Id. at 10) (citing In re Schofield-Johnson LLC, 462 B.R. 539, 543 (Bankr. M.D.N.C. 2010)).

In adopting the Bankruptcy Judge's findings, this Court acknowledges that this case presents a rare instance in which the "badges of fraud" analysis is dispositive on the issue of actual intent. Normally, the issue of actual intent involves a determination of credibility which is the duty of a jury rather than a judge. In re French, 499 F.3d 345, 353-54 (4th Cir. 2007) (holding that a bankruptcy court must refrain from making "credibility determinations which are not appropriate in a court's assessment of a motion for summary judgment," because "[i]n the summary judgment context, a court is simply not empowered to make such determinations."). In applying the badges of fraud to the instant case, the Court is directed by the unique circumstances where the intent of the parties is readily discernible from their actions as to relieve the Court from making determinations of credibility.

---

[4] The evidentiary record supports the Bankruptcy Judge as to each of these findings, which, in the interest of economy, are cited here. All of the citations are from the evidentiary record of Adversary Proceeding No. 12-05033. 1) Transfer to wife, (Doc. No 62 at 15: Defendant's Opposition To Trustee's Motion For Partial Summary Judgment) ("Debtor deposited **all** of his income, regardless of source, into the marital account."). 2) Debtor retained authorized use. (Id.). ("Debtor was not an owner of the bank account but rather an authorized user of the account with full access to his proceeds."). 3) Continued use of funds by debtor. (Id.). ("The Debtor spent his lawsuit proceeds.") 4) Failure to disclose. (Doc. No. 55-7, Ex. K at 19-20). ("Q: Why don't you list that account on your schedules? A: Because that account doesn't belong to me. I am just the authorized user of it."). 5) Suit by Creditor against debtor. (Doc. No. 55-1, Ex. A at 2) (awarding Creditor judgment of $18,384.43 against debtor). 6) Funds deposited as share of income. (Doc. No. 62 at 15). 7) Lack of adequate consideration. (Doc. No. 62 at 5-6: Declaration of Matthew A. Jenkins; Doc. No. 75-3: Declaration of Dianna L. Jenkins). 8) Continued debt to Creditor, (Id. at 7).

The factual account is, in the main, undisputed. Federated had obtained a judgment against Debtor prior to the bankruptcy petition. The Debtor received payouts of lawsuit proceeds which he directed to a bank account owned and maintained by his wife of which Debtor was an authorized user. Debtor did not provide any consideration to his wife for the use of the account. Debtor was the exclusive user of the account as his wife did not make any direct use of the lawsuit proceeds. Debtor continued to use the funds for his personal use. On each of these issues, the Appellant did not present any facts to the contrary. Ultimately, Appellant's repeated admissions that the Debtor transferred the funds with the purpose of retaining access to them for his own use, speaks so directly to the intent of the parties as to vitiate any genuine issues of material fact as to the issue. These facts establish clearly that the transfer was fraudulent and designed to allow Debtor to continue to use funds even as they were placed outside the reach of creditors. The facts, in the immediate case, are such that the Court cannot find that a reasonable trier of fact would find that debtor lacked the requisite intent to engage in a fraudulent conveyance.

Accordingly, this Court **ADOPTS** the Bankruptcy Judge's recommendation that Summary Judgment be granted to Appellee on the issue of Actual Fraud. Having found summary judgment appropriate under 11 U.S.C. § 544(b) and applicable N.C. Gen. Stat. § 39-23.4, the Court dispenses with adoption or review of the Bankruptcy Judge's findings of actual intent under 11 U.S.C. 548(a)(1)(A).

2.     Lawsuit Proceeds Concealed or Removed Beyond Reach of Creditors

Appellant objects that the Debtor did not conceal or remove the lawsuit proceeds as Federated had knowledge of their existence during all relevant periods. The evidentiary record

supports Appellant's contention that Federated knew about the transfer prior to the petition for bankruptcy.

Neither section 544 nor 548 of the Bankruptcy Code requires a showing that a debtor concealed or removed assets in order for the trustee to obtain power to avoid a transfer of property. The issue, therefore, is relevant only insofar as concealment of an asset (or removal beyond the reach of creditors) is one of the factors under the "badges of fraud" analysis used to determine actual intent. Here, the Court finds no clear error in the Bankruptcy Judge's finding that the debtor concealed the lawsuit proceeds by having them deposited into Appellant's bank account.

The touchstone inquiry in determining whether an asset has been concealed or removed beyond the reach of a creditor is whether the debtor has retained an interest in an asset despite a purported transfer. See Rosen v. Bezner, 996 F.2d 1527, 1532 (3d Cir. 1993). In examining the concealment provision in analogous circumstances under 11 U.S.C. § 727, the Third Circuit found that "to prove concealment, a showing that the debtor retained an interest in the transferred property is required." Id. In facts similar to the instant case, the Third Circuit in Rosen found concealment where a debtor's income was deposited into an account not opened or maintained in debtor's name, but which debtor had exclusive control over and unlimited access to, and where he regularly withdrew funds for his personal use. Id. Whether the creditor knows about the assets or not is not dispositive. In re Butler, 377 B.R. 895, 918 (Bankr. D. Utah 2006). Where the debtor removes assets from the reach of creditors, the debtor has effectively concealed those assets. Id.

Accordingly, the Court adopts the Bankruptcy Judge's finding that Debtor concealed or

removed the assets from the reach of creditors sufficient to support a finding under N.C. Gen. Stat. § 39-23.4(b)(7).

      3.    <u>Amount of Judgment</u>

Appellant objects that the Bankruptcy Judge erred in awarding Appellee $226,033.31, which represents the total of the lawsuit proceeds deposited in Appellant's bank account. Defendant had argued that the Trustee's recovery would be limited to the amount necessary to satisfy the Federated judgment rather than the total of the lawsuit proceeds. The Bankruptcy Judge found that Plaintiff "brought this adversary proceeding on behalf of the entire bankruptcy estate" and is thereby entitled to recover for the full amount of the transfers in order to satisfy the claims and expenses of the Debtor's case." (Order at 20).

Appellant maintains that the Bankruptcy Judge misquoted the statute and substituted the term "lien" for "claim." (Doc. No. 3 at 32). N.C. Gen. Stat. § 39-23.8 limits recovery to the "value of the asset transferred, . . . or the amount necessary to satisfy the creditor's claim, whichever is less."

The Court finds this error harmless as, notwithstanding this misquotation, the Bankruptcy Judge applied the law correctly. 11 U.S.C. § 550 provides that in transfers avoided under sections 544 or 548, the trustee "may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made . . . ."

Plaintiff brought this adversary proceeding on behalf of the entire bankruptcy estate. (Order at 20). The law has long been settled and establishes that the amount the trustee may recover extends beyond the claim of an individual creditor to include the full amount of the

fraudulent conveyance. "The Bankruptcy Code invests the trustee with unique powers that combine the rights of creditors to recover fraudulent conveyances with the authority of a conservator to gather in the assets of the bankruptcy estate that were improperly disbursed prepetition. These powers, invoked here by the Chapter 11 Trustee, arise from Section 544(a) of the Bankruptcy Code." In re Fabian, 458 B.R. 235, 256 (Bankr. D.Md. 2011). "Section 544 transfers the right to recover fraudulent transfers from individual creditors to the bankruptcy trustee . . . acting as a fiduciary on behalf of all creditors. Thus, any recovery of fraudulent conveyances pursuant to Section 544 is not limited to the amount of the claim of an individual creditor, but to the full extent of the conveyance." Id. at 258 (citing Moore v. Bay, 284 U.S. 4, 5 (1931)). "Nevertheless, property that the trustee recovers from an avoidance claim becomes property of the bankruptcy estate." Id. (quoting Guttman v. Martin (In re Railworks Corp.), 325 B.R. 709, 721.

This legal principle has long existed. "The trustee in bankruptcy gets the title to all property which has been transferred by the bankrupt in fraud of creditors or which prior to the petition he could by all means have transferred, or which might have been levied upon and sold under judicial process against him." Moore v. Bay, 284 U.S. 4, 5 (1931) (Holmes. J.) (emphasis added).

For these reasons, the Court **ADOPTS** the recommendation of the Bankruptcy Judge and finds that the Trustee (Appellee) is entitled to recover the amount of lawsuit proceeds set out in the Amended Bankruptcy Papers, $226,033.31.

4.      Constructive Fraud

Finally, Appellant did not object to the recommendation of the Bankruptcy Judge that

partial summary judgment be granted pursuant to N.C. Gen. Stat. §§ 39-23.4(a)(2) & 39-23.5(a) and 11 U.S.C. § 544(b). The Bankruptcy Judge applied the law correctly and this Court ADOPTS the Bankruptcy Judge's findings and recommendations and **GRANTS** Appellant's Motion for Partial Summary Judgment for Constructive Fraud.

IV.     **CONCLUSION**

        **IT IS, THEREFORE, ORDERED** that the Bankruptcy Judge's Recommendations as to final disposition, Case No. 12-05033, (Bankr. Doc. No. 64), are **ADOPTED**.

1.  Appellee's Motion for Summary Judgment for Actual Fraud (Bankr. Doc. No. 55) is **GRANTED.**

2.  Appellee's Motion for Partial Summary Judgment for Constructive Fraud (Bankr. Doc. No. 55) is **GRANTED**

3.  Appellant is liable to Appellee in the amount of $226,031.33.

4.  The Clerk of Court is directed to close this case.

                Signed: September 6, 2013

                Robert J. Conrad, Jr.
                United States District Judge